Brigham, Assignee in Bankruptcy, vs. Claflin and others.

---

BRIGHAM, Assignee in Bankruptcy, vs. CLAFLIN and others.

31 607
e106 337
31 607
d112 ²408
31 607
81 Minn 345

BANKRUPTCY. — FEDERAL AND STATE COURTS. (1) *State court will not entertain suits to enforce penal provisions of U. S. bankrupt law.* (2) *Whether state courts have jurisdiction of any action brought by the assignee in bankruptcy.*

1. The first clause of sec. 35 of the bankrupt law of the United States, which provides that any payment, transfer or conveyance of property, made by a debtor, being in insolvent circumstances, within four months previous to filing his petition, with a view to giving preference to a creditor, shall be void, if such creditor, at the time, has reasonable ground to believe that the debtor is insolvent, etc.,— is *penal* in its character; and an action by an assignee in bankruptcy, under said section, to recover the value of goods transferred to defendants by the bankrupt in fraud of the provisions of said act (such transfer being valid by the laws of this state), will not be entertained by the courts of this state.
2. COLE, J., is also of the opinion, that the federal courts should be held to have exclusive jurisdiction of *all* proceedings under said bankrupt law, including all actions brought by the assignee in bankruptcy, as such.

APPEAL from the Circuit Court for *Milwaukee* County.

This action was brought by the assignee of a bankrupt, to recover the value of a stock of goods alleged to have been transferred by the bankrupt to the defendants, in fraud of the provisions of the bankrupt law, less than four months before the filing of the petition in bankruptcy, in contemplation of in-

solvency, and for the purpose of giving a preference to the defendants as creditors, and with knowledge of the facts on their part, and not in the ordinary course of business of the debtor. The complaint was demurred to, on the grounds, 1. That the court had no jurisdiction of the subject of the action. 2. That the plaintiff had not legal capacity to sue. 3. That the complaint did not state facts sufficient to constitute a cause of action. From an order overruling the demurrer the defendants appealed.

*Jenkins & Elliott*, for appellants, cited art I., sec. 8, subd. 4, and art. III., secs. 1 and 2, of the constitution of the United States, and contended that the following principles are now firmly established in regard to the jurisdiction of the federal and state courts respectively :   (1) That the judicial power of the United States is unavoidably, in some cases, exclusive of all state authority, and in all cases may be made so at the election of congress.   (2) That the state courts can exercise a concurrent jurisdiction only when permitted by congress, and where, previous to the constitution, state tribunals possessed jurisdiction independent of national authority.   (3) That congress cannot confer jurisdiction on any courts save such as exist under the constitution and laws of the United States ; and where concurrent jurisdiction is permitted to the state courts, such courts derive no authority from congress over the subject matter, but exercise only such jurisdiction as is conferred by the state constitution and laws.   Story's Com., §§ 1742–1750 ; 1 Kent's Com., 395–407 ; *Martin v. Hunter*, 1 Wheat., 304 ; *Houston v. Moore*, 5 id., 1 ; *U. S. v. Lathrop*, 17 Johns., 4.   2. Counsel cited secs. 1, 2, 14, 16 of the bankrupt act, and contended that the act shows upon its face a design to secure a prompt and effectual administration of the estates of all bankrupts, worked out by the federal courts, without the assistance of the state tribunals, with a possible exception in respect to suits by or against the bankrupt pending at the commencement of the proceedings in bankruptcy. In support of this view they cited the following decis-

ions under the act of 1841 : *Ex parte Christy*, 3 How. (U. S.), 320 ; *Peck v. Jenness*, 16 N. H., 516 ; *Same Case*, 7 How., 612, 614 ; *McLean v. LaFayette Bank*, 3 McLean, 185 ; *Russell v. Cheatham*, 8 Sm. & M., 703, 709 ; *Ex parte Martin*, 5 Law Rep., 158 ; *Mitchell v. Great Works Co.*, 2 Story, 648. They also cited the following cases decided under the present act : *Markson v. Heaney*, 1 Dillon, 497, 511 ; *In re Merchants' Ins Co.*, 4 Ch. Leg. News, 73 ; *Norris' Case*, 1 Abb. (U. S.), 514 ; *Woolfolk v. Murray*, 44 Ga., 133 ; *In re Barrow*, 1 N. B. R., 125 ; *In re Mallory*, 6 id., 22. 3. They further argued that however the question of jurisdiction may be determined in cases in which the assignee brings suit upon causes of action existing independently of the bankrupt law, the cause of action in this case arises out of and is created by that act. It never existed in the hands of the bankrupt or his creditors. The transaction complained of is valid and binding at the common law, and was justified and protected by the laws of the state. Upon repeal of the bankrupt law, this cause of action would fall with it. The case thus presents the question, whether jurisdiction can be conferred by act of congress upon the state tribunals, over causes of action which were not within their jurisdiction independently of the act ; and whether, if it could be conferred, it will be held to have been conferred by an act which does not expressly confer it upon those courts, but, on the contrary, provides another forum, and prescribes the manner in which recoveries may there be had. To these questions counsel cited *Parsons v. Barnard*, 7 Johns., 144 ; *Dudley v. Mayhew*, 3 Coms., 9 ; *Prigg v. Commonwealth*, 16 Peters, 539 ; *Sturges v. Crowninshield*, 4 Wheat., 193.

*Wells & Brigham*, for respondent, contended, in respect to cases which grow out of the constitution and laws of the United States, and of which it can hardly be said that the state courts had jurisdiction before, that the decision of such cases *may* be committed by congress to the federal courts exclusively ; but, unless such exclusive jurisdiction is expressly given, state courts take concurrent jurisdiction, subject to review by the supreme

court of the United States; except in cases where, by the constitution itself, the power is given to the federal courts exclusively, or is prohibited to the states. Federalist, No. 82; *Martin v. Hunter*, 1 Wheat., 304; 1 Kent's Com., 397; opinion of WASHINGTON, J., in *Houston v. Moore*, 5 Wheat., 26; *Delafield v. Illinois*, 2 Hill, 161; *Teall v. Felton*, 1 N. Y., 537. 2. State courts have not concurrent jurisdiction in criminal actions which arise under United States laws, nor in actions for penalties prescribed by such laws; but this rule rests upon other principles, and not on any constitutional provision. Cases arising under penal laws, or where the remedy is provided by act of congress alone, are not to be confounded with those in which an ordinary civil remedy is sought, though the right of property may be established by a law of the United States. *Teall v. Felton*, 1 Coms., 546; *U. S. v. Lathrop*, 17 Johns., 8. Where the federal power creates a peculiar right and provides a special remedy and mode of proceeding, and designates a particular forum, the act has been construed as excluding any other forum; as in suits for the infringement of patent rights. *Dudley v. Mayhew*, 3 Coms., 9. So, in the bankrupt law, the provisions for the adjudication of bankruptcy, the distribution of the estate, and the discharge of the debtor, are special and peculiar provisions, and a particular federal tribunal is designated, and doubtless the jurisdiction of state courts excluded. But the act also gives the assignee certain rights, including the right to recover property of the bankrupt fraudulently transferred to creditors, and provides no special proceedings for enforcing that right, and in no way indicates an intention to exclude the jurisdiction of state tribunals. Counsel further argued that the bankrupt acts of 1801 and 1841 both contained the same provisions as the present law, as to jurisdiction of the federal courts, and cited in support of their views the following cases decided under the two former acts: *Ogden v. Jackson* 1 Johns., 370; *McMenomy v. Ferrers.* 3 id., 83; *Phœnix v. Assignees, etc.*, 5 id., 412; *Ward v. Jenkins*, 10 Met., 583; *Hastings v. Fowler*, 2 Cart. (Ind.), 216.

They further cited *Stevens v. Mechanics' Bank*, 101 Mass., 109 ; *Beals v. Quinn*, id., 262 ; *State v. Trustees, etc.*, 5 N. B. R., 471. 3. In cases like the one at bar, where the defendants are non-residents of the state, and not within the jurisdiction of the federal court in which the bankruptcy proceedings were had, and, at the time the action was commenced, could not be reached by attachment from that court, jurisdiction in the state court is necessary to prevent a failure of justice; since it seems to be the better opinion that suits by an assignee, if brought in the federal court, must be brought in the district in which the petition is filed.   LOWELL, J., in *Sherman v. Bingham*, 5 N. B. R., 34.

COLE, J.   The questions raised upon the record are highly interesting and important, and have not, so far as we know, ever been passed upon by the supreme court of the United States.   We have, therefore, given them all the consideration which our limited time and duty to other causes enabled us to bestow upon them ; and I am now to announce the conclusions at which we have arrived upon the questions presented for our decision.

In support of the demurrer the counsel for the defendants insist, that the jurisdiction conferred by the bankrupt law upon the several district and circuit courts of the United States is, in its nature, necessarily exclusive of the state courts ; and that, even if the state courts had jurisdiction concurrently with the federal courts in suits in relation to the property of the bankrupt, they should not exert that jurisdiction in a case like the one before us.

The objections to holding that the state courts had jurisdiction of the cause appeared to me on the argument to be grave, if not insuperable; and all the reflection I have been able to give the subject since has not lessened their weight.   One of the most obvious and direct results of the state courts assuming jurisdiction, of course, is to withdraw from the United States

district courts a suit instituted for the collection of the assets of the bankrupt — a matter which properly belongs to those courts. The act of congress gives the several district courts original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and expressly authorizes them to collect all the assets of the bankrupt, and to exercise jurisdiction in all matters and things to be done under and in virtue of the bankruptcy. There is surely no indication upon the face of the act of any intention to confer any jurisdiction upon the state courts in matters of bankruptcy, even if it were competent for congress to do so; on the contrary, with the possible exception of suits pending in the state courts in favor of or against the bankrupt at the commencement of the bankrupt proceedings, the natural and reasonable inference is that the jurisdiction is confined exclusively to the courts of the United States. It is true, the practice seems to have been, both under the bankrupt law of 1800 and that of 1841, for the state courts to entertain jurisdiction of actions brought by the assignee of a bankrupt; but this jurisdiction was not seriously questioned until the case of *Ward v. Jenkins*, 10 Met., 583. In that case it was claimed by the counsel for the defendants, that an action for a breach of a covenant made with the bankrupt could not be brought by the assignee in a state court, and that such a suit was only cognizable by the federal courts ; but the objection was overruled, the state court asserting its jurisdiction of the action. This case was subsequently followed in Massachusetts, in an action brought by an assignee under our present bankrupt law to recover money paid by the defendants to the bankrupt in good faith without knowledge of the bankruptcy, but in fact made after the publication of notice of the warrant in bankruptcy under section 11 ; though the objection that the courts of the United States had exclusive jurisdiction of such an action was waived at the argument. *Stephens v. Mechanics' Savings Bank*, 101 Mass., 109 ; see also *Forbes v. Howe*, 102 id., 428. The case of *Ward v. Jenkins* was also followed in

Indiana in *Hastings v. Fowler*, 2 Carter, 216. In Kentucky, in an action brought by the assignee in equity for recovering property real and personal, charged to have been fraudulently transferred by the bankrupt, the state court say they do not doubt but they have jurisdiction concurrent with the federal courts, to decree in favor of the assignee, and that such jurisdiction had been too often exercised in that state to be an open question. *Boone v. Hall*, 7 Bush, 66. See also *Paine v. Able*, id., 344; and *Shackleford v. Collier*, 6 id., 149. In Pennsylvania, the jurisdiction of the state courts in actions brought by the assignee to recover the property of the bankrupt, does not seem to be questioned. *Mays v. Manufacturers' National Bank*, 64 Pa. St., 74. See *Pierce v. Evans*, 61 id., 415; *Rohrer's Appeal*, 62 id., 498. But on the other hand, the supreme court of Michigan, in a well considered decision recently made — of which a manuscript copy of the opinion has been furnished us by the counsel for the defendants in this case — decline to take jurisdiction of a bill in equity filed by an assignee to set aside a conveyance alleged to have been made by the bankrupt in fraud of the bankrupt law: *Voorhees, Assignee, etc., v. Frisbie et al.*, unreported. The reasoning of the court in this case is strongly in support of the position that the state courts have no jurisdiction of actions arising under the bankrupt law, though the decision was placed upon grounds more peculiarly applicable to suits in equity. But the practical difficulties which will necessarily result if a state court at law should entertain suits brought by assignees concerning the property and debts of the bankrupt, are scarcely less grave and serious than the complications which might arise in equitable actions. In the first place, it must be obvious that the assertion of a state jurisdiction in such causes will greatly tend to protract and multiply suits in respect to the bankrupt's estate, and will inevitably be a most fruitful source of conflict and collision between the state and federal tribunals. The object and policy of the bankrupt law manifestly are to collect and distribute the property of the bankrupt among his creditors as

promptly as practicable; and these ends can be much more readily accomplished by the United States courts — which have plenary jurisdiction in these matters — than by tribunals acting by different modes, and deriving their powers from other sources. Some of the remarks made by Mr. Justice STORY in the case of *Ex parte Christy*, 3 How. (U. S.), 292, in reference to the provisions of the bankrupt law of 1841, express my own views so well upon this subject that I cannot do better than quote them. He says: "The obvious design of the bankrupt act of 1841, ch. 9, was to secure a prompt and effectual administration and settlement of the estates of all bankrupts within a limited period. For this purpose it was indispensable that an entire system adequate to that end should be provided by congress, capable of being worked out through the instrumentality of its own courts independently of all aid and assistance from any other tribunals over which it could exercise no effectual control. * * * It is farther objected that if the jurisdiction of the district court is as broad and comprehensive as the terms of the act justify according to the interpretation here insisted on, it operates, or may operate, to suspend or control all proceedings in the state courts either then pending or thereafter to be brought by any creditor or person having any adverse interest to enforce his rights or obtain remedial redress against the bankrupt or his assets after the bankruptcy. We entertain no doubt that, under the provisions of the 6th section of the act, the district court does possess full jurisdiction to suspend or control such proceedings in the state courts, not by acting on the courts, over which it possesses no authority, but by acting on the parties, through the instrumentality of an injunction or other remedial proceedings in equity, upon due application made by the assignee and a proper case being laid before the court requiring such interference. * * It would be easy to put cases in which the exercise of this authority may be indispensable on the part of the district court to prevent irreparable injury, or loss or waste of the assets, without

adverting to the case at bar, where, upon the allegations in the petition and supplemental petition, the creditors of the bankrupt are attempting to enforce a mortgage asserted to be illegal and invalid, and to procure a forced sale of the property by the sheriff in an illegal and irregular manner, thereby sacrificing the interest of the other creditors under the bankruptcy.   *   * If we are told that resort may be had to the state courts for redress, our answer is, that in some· of the states no adequate jurisdiction exists in the state courts, since they are not clothed with general jurisdiction in equity. But a stronger and more conclusive answer is, that congress did not intend to trust the working of the bankrupt system solely to the state courts of twenty-six states, which were independent of any control by the general government and were under no obligation to carry the system into effect. The judicial power of the United States is, by the constitution, competent to all such purposes; and congress by the act intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do." pp., 312, 318, 319, 320. These remarks indicate clearly that, according to the judgment of this eminent judge, sound policy and a just regard to public as well as private interests require that the jurisdiction of the district and circuit courts of the United States over all cases arising under the bankrupt law should be exclusive of the state courts. And I cannot but think that congress has in fact vested in those courts this complete and exclusive jurisdiction over "all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the ·bankrupt," including of course such jurisdiction and power as may be essential for "the collection of all the assets of the bankrupt," independently of all aid and assistance from any state tribunals, over which it could exercise no effectual control.   See also *McLean, assignee etc., v. LaFayette Bank*, 3 McLean, 185; *Peck v. Jenness*, 7 How. (U. S.), 612.

But even if I had any doubt about this being the proper con-

struction of the bankrupt law, I should still think it was more consistent with the dignity and independence of the state tribunals to decline to take jurisdiction of cases arising under that act — if such jurisdiction theoretically existed — rather than expose themselves to collisions and conflicts with the United States courts, or subject their proceedings to the control of those courts in attempting to adjudicate them. It must be understood, however, that I only express my own views upon this question, that the act vests in the federal courts exclusive jurisdiction of all actions arising under the provisions of the bankrupt law so as to take from the state courts any jurisdiction in those cases ; but that my brethren do not deem it necessary to express an opinion upon that question at the present time. According to their view the complaint states a cause of action under the thirty-fifth section of the bankrupt law, which is penal in its character, " in creating a forfeiture and disability enforceable in favor of the assignee " (*Voorhees v. Frisbie, supra*), and a state court will not exert its jurisdiction to enforce such a liability. I am inclined to agree with them, and to hold that the demurrer should have been sustained even upon that ground.

The first clause of the thirty-fifth section of the bankrupt law was obviously designed to defeat and render void any transfers or sales of property made by a debtor, being insolvent or in contemplation of insolvency, with a view to give a preference to a creditor. And it provides that any payment, transfer or conveyance of property made by the debtor, being in insolvent circumstances, within four months previous to filing his petition, with a view to giving a creditor such preference, shall be void if the creditor at the time has reasonable cause to believe the debtor is insolvent, and the payment or transfer was made in fraud of the act. The complaint states a cause of action under this provision, and the assignee seeks to recover the stock of goods or their value from the defendants.

It is plain that this suit is founded strictly upon the provisions of this act — would not exist independently of it — and is

not, as was the case in *Ward v. Jenkins*, brought upon a contract or to recover a debt due the bankrupt. The bankrupt law condemns and avoids the sale and assignment of property stated in the complaint to have been made, because they were made with a view to give the defendants a preference. But the transaction is entirely valid by the state law. The fact that a debtor in insolvent circumstances chooses to pay one creditor in preference to another, is not a fraud under the state statute — nor is it contrary to public policy and good morals. Such a preference is only forbidden by the bankrupt law — declared to be a fraud upon its provisions and in contravention of its policy and design. But these provisions, which avoid the sale and create the forfeiture, are penal in their character, and consequently the question arises : Should the state courts exert their jurisdiction to enforce them ?

The doctrine is well settled that one state will not take cognizance of nor enforce penalties imposed by the laws of another state; and the principle applies to acts of congress which create a forfeiture. The rule is clearly stated by Chief Justice SPENCER in *The United States v. Lathrop*, 17 Johns., 3, which was an action brought to recover a penalty imposed by an act of congress for selling by retail spirituous liquors without license, contrary to the provisions of the law. He says : " It cannot be doubted, that a pecuniary penalty for a violation of, or nonconformity to, an act of congress, is as much a punishment for an offense against the laws, as if a corporal penalty had been inflicted; and as regards crimes and offenses made so by legislative enactment, the government of the United States stands in the same relation to the state governments as any foreign government, and it is a fundamental maxim, that the courts of one sovereignty will not take cognizance of, nor enforce, the penal code of another. Thus, in the case of *Scoville v. Canfield* (14 Johns., 339), we held that we would not enforce a penal statute of Connecticut, on the broad principle, that the courts of this state will not carry into effect the penal laws of another state." p. 9. And

this same rule has frequently been applied to actions brought in one state to enforce a liability imposed by statute upon the officers of a corporation created by another state, for some vio·lation of duty. Such liability is considered to be in the nature of a penalty created by statute, which the courts of another state will not enforce. *First National Bank etc., v. Price et al.*, 33 Md., 488 ; *Derrickson v. Smith*, 3 Dutcher, 166 ; *Halsey v. McLean*, 12 Allen, 438. In these cases, and others which might be cited to the same purport, the courts say that the liability imposed upon the officers of the corporation for a failure to perform a duty enjoined by the statute, is in the nature of a penalty; that the law imposing the liability can have no extra-territorial operation; and that there is no usage or rule of comity which requires the courts of another state to enforce such liability. We cannot see why the same principle should not be applied to the provisions of the bankrupt law before us. For, as already remarked, the subject matter of this suit does not exist independent of these provisions which are penal in their nature. *The Harrisburg Bank v. The Commonwealth*, 26 Pa. St., 451. They avoid a transfer and assignment of property valid by the law of the state and binding on the debtor himself. They destroy a title because the assignment or conveyance was made with a view to give a preference to a creditor. If a statute which enjoins a duty to be performed by the officers of a corporation, and, in case of failure on their part to perform such duty, makes them individually liable for the debts of the corporation, is penal in its nature — as held by the cases above cited — and can only be enforced in the state enacting the law, there are surely strong grounds for saying that the provisions of the bankrupt law which forfeit and destroy a title acquired under the circumstances stated in the complaint, are highly penal in character, and are to be governed by the rules and principles applicable to such statutes. And as this action is brought to enforce, through the instrumentality of the courts of this state, these penal provisions, the action

must fail. For the entire right of action grows out of these provisions, and depends wholly upon them.

In the case in Michigan above referred to, the supreme court of that state take the same view of these provisions. They say: " The right to assail the conveyance in question is purely statutory upon the case made by the bill. It is also in the nature of a penal enactment, in creating a forfeiture and disability enforceable in favor of the assignee. It is generally understood to be settled law, that no court will take jurisdiction for the sole purpose of enforcing the penal consequences imposed by any other authority, which has its own courts to enforce them."

It is suggested that the bankrupt act is the supreme law of the land, binding upon all courts; and that its provisions address themselves with the same compelling obligation to the state as to the federal tribunals. In a certain sense this is undoubtedly true. This court would be bound to respect and sustain titles derived through the bankrupt proceedings. This is clear. But its duty and power to take jurisdiction of causes arising under the bankrupt law are quite different matters.

It results from these views that the demurrer to the complaint should have been sustained.

*By the Court.*— The order overruling the demurrer is reversed, and the cause remanded with directions to dismiss the complaint.